STATE OF NORTH CAROLINA v. WILLIAM HOBERT MOORE

No. 97

(Filed 25 January 1974)

**1. Criminal Law § 75— voluntariness of confession**

Defendant's confession in a first degree murder and armed robbery case was properly admitted where evidence on *voir dire* disclosed that proper cautions and warnings were given defendant by an agent of the Naval Investigation Service and by an SBI agent, defendant signed a written acknowledgment of the warnings and the waiver of counsel, and he consented to the interrogation.

2. **Homicide §§ 12, 25— first degree murder — murder in perpetration of robbery — no variance in indictment and proof — instructions proper**

   Where the indictment charged that defendant murdered his victim after premeditation and deliberation, the trial court did not err in charging the jury that it might convict the defendant of murder in the first degree upon a finding beyond a reasonable doubt either that the defendant killed deceased after premeditation and deliberation or in the perpetration of armed robbery, since an indictment drawn under G.S. 15-144 will support a verdict of murder in the first degree without any further allegation of premeditation and deliberation or in the perpetration or attempt to perpetrate a felony.

3. **Criminal Law § 26; Homicide § 31— murder in perpetration of robbery — separate conviction for robbery — error**

   Where the trial court in a first degree murder and armed robbery prosecution charged that a verdict of murder in the first degree could be rendered upon a finding beyond a reasonable doubt that the killing was done in the perpetration or in the attempt to perpetrate a robbery, the robbery in this case was merged in and became a part of the first degree murder charge; therefore, conviction and sentence on the armed robbery charge was error, the verdict is set aside, and judgment is vacated.

APPEAL by defendant from *Thornburg, J.,* June 25, 1973 Session, CARTERET Superior Court.

In these criminal prosecutions the defendant, William Hobert Moore, was brought to trial on two grand jury indictments. In Case No. 73CR154 the bill charged:

"THE JURORS FOR THE STATE UPON THEIR OATH, PRESENT, That William Hobert Moore late of the County of Carteret on the 1st day of January 1973 with force and arms, at and in the county aforesaid, unlawfully, wilfully, feloniously and of his malice aforethought did kill and murder William J. Casey with premeditation and deliberation against the form of the statute in such case made and provided and against the peace and dignity of the State.

s/ SAM J. WHITEHURST, JR.
Ass't Solicitor"

In Case No. 73CR155 the bill charged:

"THE GRAND JURORS FOR THE STATE UPON THEIR OATH PRESENT, That William Hobert Moore late of the County of Carteret on the 1 day of January 1973, with force and arms, at and in the county aforesaid, unlawfully, wilfully, and feloniously, having in _____ possession and with the use

and threatened use of firearms, and other dangerous weapons, implements, and means, to wit: a .38 Caliber Revolver whereby the life of Cpl. William J. Casey was endangered and threatened, did then and there unlawfully, wilfully, forcibly, violently and feloniously take, steal, and carry away one Seiko wrist watch, one silver colored ring, one cig. lighter, one wallet; $20.00 in currency and one 1965 Chev. Impala conv. motor vehicle of the value of excess of $200.00 from the presence, person, place of business, and residence of Cpl. William J. Casey contrary to the form of the statute in such case made and provided and against the peace and dignity of the State.

s/ ELI BLOOM<br>
Solicitor"

On the State's motion, the charges were consolidated for trial.

The State's evidence in summary discloses: That about 9 o'clock on the morning of January 1, 1973, Willie Stallings discovered the dead body of William J. Casey lying in the front seat of a junked automobile in the Parrish Junk Yard near Newport in Carteret County. A pathological examination of the body disclosed two bullet wounds in the back of the head and neck. One of the bullets had passed through the muscles of the neck. The other had ranged downward through the lungs and heart and had caused almost instantaneous death.

Curtis James Riggles testified that he and the defendant, William Hobert Moore, were fellow Marine Corps members. They were together on December 31, 1972, celebrating New Year's Eve. They attended numerous parties and did much drinking. As they were riding in Riggles' automobile, the automobile became disabled, or stuck in the mud, and both left on foot. As Riggles and the defendant were walking towards the Marine Base, the deceased, William J. Casey, in his automobile, picked them up. The three stopped at a bar, did some drinking, and then left. " . . . Bill Moore [the defendant] slipped me a pistol and I pulled the pistol on Casey right in one of the trailer parks. Then I got in the back seat and Bill [the defendant] got up and drove the car to a junk yard in Newport. . . . Just as soon as we reached the junk yard Bill [the defendant] took his [Casey's] watch and wallet. . . . Bill Moore asked me for the pistol and I gave it to him and he told me to wait in the car

while he went and tied Mr. Casey up. . . . About a half hour later Bill came back and said that he had shot Mr. Casey. . . . [H]e said he had shot Casey twice. . . . When we got back to the base we went to Bill Moore's barracks, No. 216. Moore laid all the stuff he had gotten on the table. There was a watch, a ring, a twenty dollar bill, wallet, two ID cards, a set of keys and four empty cartridges."

On cross-examination Riggles testified: "When the car stopped I pulled this .38 caliber gun on Casey and put it right against his head and Bill took his wallet and his watch while I had the gun on him."

On further examination the witness admitted he was under indictment for participating in the murder and the robbery and that his lawyer had advised him it would be better for him to testify for the State and he agreed to testify for the State.

The prosecution informed the court that the State desired to offer the defendant's confession made to the Naval Investigative Service and to the agents of the State Bureau of Investigation. The court excused the jury and conducted a voir dire to determine the competency of the confession.

Henry Poole, an agent of the State Bureau of Investigation, testified that he participated in the interrogation of the defendant at the office of Agent Brock of the Naval Investigative Service at Cherry Point on January 2, 1973. Before the interrogation began, Agent Brock gave the defendant the warnings and cautions according to the use and custom in court-martial proceedings. These were somewhat different in form from the warnings and cautions given in State criminal investigations. Agent Poole, thereafter, gave the warnings according to the State rules, reading from a printed card. The defendant signed a written acknowledgment of the warnings and the waiver of counsel and consented to the interrogation. The defendant wrote and signed a statement which contained this recital:

"... On the way back I was sitting in the back. Riggles was in the front. Riggles pulled the keys out of the car and pulled the gun. I told the driver [Casey] to scoot over, and he did. I started driving. Riggles got in the back seat. I drove back to this same junk yard and told this guy [Casey] to get in the front seat of the junk car on his stomach. Then I shot him twice in the back of the head. I left in the man's car that I shot. It was an old Chevy. I

don't know what year it was. I can't remember. Riggles was with me all this time. The car ran hot. We left it at a stop light. We started back to Base. We got back to the barracks. I took $20.00 from his wallet and I told Riggles to flush it down the toilet and he did."

Agent Brock testified for the State on the voir dire, corroborating the testimony of Agent Poole.

The defendant testified on the voir dire contending he did not remember anything after he and Smith and Riggles left the pub the previous night; that he signed a paper during the interrogation at the office of the Naval Investigative Service on the morning of January 2, 1973; that the paper he signed was dictated by the investigating officer and he signed it because he was told to sign it and not because the paper contained a true statement.

The court found the defendant was duly warned of his rights, including the right to military and civil counsel during the interrogation; that his waiver of counsel and his consent to the interrogation were entirely free and voluntary; that his admissions were freely and understandingly made and were properly admissible in evidence. The court permitted the State to introduce the statements before the jury. At the conclusion of the State's evidence, the court denied the defendant's motion to dismiss.

The defendant testified as a witness before the jury that he is nineteen years of age. He dropped out of school in the tenth grade and joined the Marines in April, 1971. He served overseas in Japan and Vietnam. While he was in Japan he was tried for stealing a car "while I was drinking." He had been drinking since he was thirteen.

Dr. Phillip G. Nelson was called and examined as a witness for the defense. The court found he was a medical expert in the field of psychiatry. He testified he examined the defendant and made inquiry in depth concerning the defendant's behavior pattern since early childhood. "All of these tests are standard psychological tests. They are used by experts and specialists in psychiatry as material upon which to consider and base the psychiatric diagnosis. . . . I examined records concerning the criminal convictions of the defendant. One thing that stands out at least as I see the record is that alcohol has always been associated with whatever goes wrong. . . . [A]lcoholic

blackout is a medically recognized syndrome. . . . [A]lcoholic blackout does not necessarily mean that the person is completely alcoholic drunk, passed out . . . . Now the matter of whether they are responsible I can't answer that question. I don't know myself."

The parties stipulated that the State's witness Riggles by arrangement was permitted to plead guilty to a charge of the armed robbery of William J. Casey and that other charges, including the charge of murder, were dismissed. The court again overruled the defendant's motion to dismiss.

In the charge to the jury, the court correctly defined the necessary elements involved in a killing in the perpetration of a robbery and instructed the jury that if they found from the evidence beyond a reasonable doubt that the defendant shot and killed William J. Casey in the perpetration or in the attempt to perpetrate a robbery, the defendant would be guilty of murder in the first degree and the jury should so find. The court also charged that if the jury found from the evidence beyond a reasonable doubt that the defendant with malice and with premeditation and deliberation shot and killed William J. Casey, the jury should return a verdict of guilty of murder in the first degree.

The jury returned a verdict in Case No. 73CR154 finding the defendant guilty of murder in the first degree; and in Case No. 73CR155 finding the defendant guilty of armed robbery. The court imposed a sentence of life imprisonment on the murder charge and a sentence of thirty years for robbery, the latter sentence to run concurrently with the life sentence for murder. The defendant excepted and appealed.

*Robert Morgan, Attorney General by Eugene A. Smith, Assistant Attorney General, for the State.*

*Herbert B. Hulse and George F. Taylor for defendant appellant.*

HIGGINS, Justice.

[1] During the course of the trial the defendant took many exceptions to the evidence offered by the State. Particularly, the defendant objected to the introduction of his confession. However, before permitting the State to introduce the confession, the court conducted a thorough voir dire hearing in the

State v. Moore

absence of the jury. The details of this examination are set out in the factual statement. The evidence for the State disclosed the proper cautions and warnings were given by both Sergeant Brock of the Naval Investigative Service and by Mr. Poole of the State Bureau of Investigation. The defendant signed a written admission that the warnings were given and that he waived the right to have counsel present during the interrogation. He signed a confession that he forced the deceased to lie down on his stomach in the front seat of a junked automobile and fired two pistol shots into his head and neck in the course of taking his money, watch, and other articles.

The evidence on the voir dire fully justified the court's finding that the interrogating officers observed all procedural safeguards in conducting the interrogation which preceded the confession. *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602; *State v. Carroll*, 282 N.C. 326, 193 S.E. 2d 85; *State v. Haddock*, 281 N.C. 675, 190 S.E. 2d 208; *State v. Mems*, 281 N.C. 658, 190 S.E. 2d 164; *State v. Williams*, 276 N.C. 703, 174 S.E. 2d 503; *State v. Haynes*, 276 N.C. 150, 171 S.E. 2d 435; *State v. Meadows*, 272 N.C. 327, 158 S.E. 2d 638; *State v. Spence*, 271 N.C. 23, 155 S.E. 2d 802; *State v. Gray*, 268 N.C. 69, 150 S.E. 2d 1. The defendant's objections to the admission of his confession before the jury were properly overruled. The evidence was ample to go to the jury and to sustain the verdict. *State v. Vestal*, 281 N.C. 517, 189 S.E. 2d 152; *State v. Bell*, 270 N.C. 25, 153 S.E. 2d 741; *State v. Stephens*, 244 N.C. 380, 93 S.E. 2d 431. The defendant's motion to dismiss was properly denied.

[2] The defendant stressfully contends the court committed error in charging the jury that it might convict the defendant of murder in the first degree either upon a finding beyond a reasonable doubt that the defendant killed Corporal Casey after premeditation and deliberation, or in the perpetration of armed robbery. The specific objection is that the indictment, having charged the killing was committed after premeditation and deliberation, it was error to permit the jury to convict the defendant of murder in the first degree upon a finding the defendant killed Casey in the perpetration of the robbery.

The legal question presented by the objection to the indictment and the charge was before this Court in the case of *State v. Fogleman*, 204 N.C. 401, 168 S.E. 536. The indictment against Fogleman is not quoted in full in this Court's opinion. However,

the record of the case on appeal discloses that the indictment contained two counts. The first count charged that "[O]n the 30th day of April, A.D., 1932, [the named defendant] with force and arms, at and in the County [Rockingham] aforesaid, unlawfully, wilfully, feloniously, premeditatedly, deliberately and of his malice aforethought, did kill and murder one W. J. Carter . . . . "

The second count charged that the named defendant, "[O]n the 30th day of April, 1932, with force and arms, at and in the County aforesaid, unlawfully, wilfully, feloniously, of his malice aforethought, and in the perpetration and in the attempt to perpetrate a felony, to-wit, robbery, did kill and murder one W. J. Carter . . . . " The evidence disclosed a killing in the attempt to commit a robbery.

Judge Stack charged the jury:

"Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation, or in the perpetration of a robbery or attempt to perpetrate a robbery. . . . "

In passing on the defendant's objection to the two count indictment against Fogleman in the light of Judge Stack's charge, this Court said:

"The indictment contains two counts, the first charging the essential facts of murder as required by C.S., 4614 [Now G.S. 15-144], the other charging murder committed in the perpetration of or in the attempt to perpetrate robbery. The prisoner excepted to an instruction referring to murder committed in the perpetration of robbery 'or other felony.' The first count in the indictment is sufficient; it contains 'every averment necessary to be made.' *S. v. Arnold,* 107 N.C., 861; . . . The instruction complained of was relevant upon the matters involved in the first count." (The first count charged premeditation and deliberation.)

The Court held that the first count charging premeditation and deliberation was sufficient to embrace a killing committed in an attempt to commit robbery.

In *State v. Arnold,* 107 N.C. 861, 11 S.E. 990, Clark, J. (later C. J.) referring to the allegations necessary to a valid indictment for murder said: "[I]t is proper to say that under

the decisions and statutes the following is full and sufficient in the body of an indictment for murder: 'The jurors for the State on their oaths present that A.B. in the county of E., did feloniously, *and of malice aforethought,* kill and murder C.D." (Emphasis added.) Research discloses that *State v. Arnold, supra,* has been cited and approved many times in the subsequent decisions of this Court.

In *State v. Craft,* 168 N.C. 208, 83 S.E. 772, the Court said: "A variance will not result where the allegations and the proof, although variant, are of the same legal significance."

In *State v. Mays,* 225 N.C. 486, 35 S.E. 2d 494, this Court said:

> "The bill of indictment charges the capital felony of murder in the language prescribed by statute. G.S., 15-144. [Formerly C.S. 4614.] It contains every averment necessary to be made. *S. v. Arnold,* 107 N.C., 861; . . . Proof that the murder was committed in the perpetration of a felony constitutes no variance between *allegata* and *probata.* (Citing *S. v. Fogleman.)* If the defendant desired more definite information he had the right to request a bill of particulars, in the absence of which he has no cause to complain."

In *State v. Grayson,* 239 N.C. 453, 80 S.E. 2d 387, the indictment charged murder in the first degree as prescribed by G.S. 15-144, without alleging either that the killing occurred after premeditation and deliberation, or in the perpetration of a designated felony. The evidence discloses the killing occurred in the perpetration or in the attempt to perpetrate the crime of rape. The defendant, claiming error, excepted to the trial court's instruction that the jury might find the defendant guilty of murder in the first degree if committed in the perpetration or attempt to perpetrate the crime of rape. The ground of the objection was the lack of a supporting allegation in the indictment. This Court, citing *Arnold, Fogleman,* and *Mays,* held: Where the bill of indictment contains every necessary averment, there is no variance between the allegation and the proof. The Court, however, awarded a new trial for error committed in the court's charge on the defendant's plea of insanity.

Any allegations in a bill of indictment over and above that which is held sufficient may be treated as surplusage. *State v. Stallings,* 267 N.C. 405, 148 S.E. 2d 252.

In *State v. Haynes, supra,* this Court held:

" . . . The indictment in this case neither alleged the killing was done after premeditation and deliberation, nor in the perpetration or attempt to perpetrate a robbery. Nevertheless, the bill is sufficient to sustain a verdict of murder in the first degree if the jury should find from the evidence, beyond a reasonable doubt, that the killing was done with malice and after premeditation and deliberation; or in the perpetration or attempt to perpetrate a robbery." (Citing *Arnold, Fogleman,* and other cases.)

In *State v. Frazier,* 280 N.C. 181, 185 S.E. 2d 652, Justice Lake, for the Court, adopting the language of Judge Barnhill in *State v. Mays, supra,* says:

" 'The bill of indictment charges the capital felony of murder in the language prescribed by statute. G.S., 15-144. It contains every averment necessary to be made. (Citing *S. v. Arnold)* . . . Proof that the murder was committed in the perpetration of a felony constitutes no variance between *allegata* and *probata.*' "

The common law offense of murder connotes a malicious killing. When the State statute divided the offense into first and second degrees, the difference depended upon the presence or absence of premeditation and deliberation. At the same time the statute provided if the killing occurred in the perpetration or attempt to perpetrate a felony, the killing became murder in the first degree. A killing in the commission or in the attempt to commit a designated felony is known as "a felony murder."

"Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. The term 'malice aforethought' cannot be substituted for the term 'premeditation and deliberation' since it does not connote premeditation and deliberation but the pre-existence of malice.

"A murder which is committed in the perpetration or attempted perpetration of robbery, rape, arson, [etc.], is murder in the first degree, irrespective of premeditation or deliberation or malice." 4 N. C. Index 2d, Homicide, Sec. 4, 1947 Ed., citing many cases including *S. v. Maynard,* 247 N.C. 462, 101 S.E. 2d 340; *S. v. Streeton,* 231 N.C. 301, 56 S.E. 2d 649; *S. v. King,* 226 N.C. 241, 37 S.E. 2d 684.

The decision of this Court in *State v. Davis*, 253 N.C. 86, 116 S.E. 2d 365, in the light of the foregoing appears to be, but is not, actually in conflict with the foregoing authorities. In *Davis*, this Court held: "By specifically alleging the offense was committed *in the perpetration of rape*, the State confines itself to that allegation *in order to show murder in the first degree*." (Emphasis added.) The indictment in Davis is here quoted in full:

"The jurors for the State upon their oath present that: Elmer Davis, Jr., late of the County of Mecklenburg, on the 20th day of September, 1959, with force and arms, at and in the County aforesaid did unlawfully, willfully, feloniously while perpetrating a felony, to-wit; rape, kill and murder Foy Bell Cooper against the form of the statute and in such case made and provided and against the peace and dignity of the State."

It will be noted the indictment failed to charge malice, a necessary allegation in a murder indictment. *State v. Arnold, supra;* G.S. 15-144.

Judge Campbell was correct in charging the jury in the *Davis* case that a verdict of guilty of murder in the first degree could be rendered *only* upon a finding that Davis killed Mrs. Cooper in perpetrating or attempting to perpetrate the crime of rape. Our holding in *Davis* that the State was confined to its allegation in the indictment that the killing occurred *in the perpetration of rape was correct.* This Court could have said, but did not say, the indictment failing to charge malice, required the State to make out its case of murder in the first degree upon a showing the killing was done in the perpetration or attempt to perpetrate the crime of rape. The indictment, *omitting malice,* was insufficient to elevate the killing above the crime of manslaughter, *except for the "felony murder"* rule which Judge Campbell submitted to the jury. There was no evidence of manslaughter in the *Davis* case. Hence, Judge Campbell correctly declined to submit manslaughter.

The indictment now before us against Moore, as the first count in *Fogleman,* charged malice, premeditation and deliberation. The evidence against Fogleman and Moore disclosed a killing in the perpetration of robbery. Our decisions in *Fogleman* and since, have held that an indictment drawn under G.S. 15-144 will support a verdict of murder in the first degree

without any further allegation of premeditation and deliberation or in the perpetration or attempt to perpetrate a felony. If the bill does allege a malicious killing after premeditation and deliberation, nevertheless the conviction will be sustained if the evidence shows and the jury finds the killing was done in the perpetration or in the attempt to perpetrate a felony. It follows, therefore, that the indictment and the charge against the defendant, William Hobert Moore, were in accordance with our prior decisions and free from error.

[3] However, the record discloses error of law in the conviction and sentence on the charge of armed robbery. The court charged that a verdict of murder in the first degree could be rendered upon a finding beyond a reasonable doubt that the killing was done in the perpetration or in the attempt to perpetrate a robbery. Hence the robbery, in this case, was merged in and became a part of the first degree murder charge.

For the reasons fully set forth in *State v. Carroll, supra,* and *State v. Peele,* 281 N.C. 253, 188 S.E. 2d 326, the verdict finding the defendant guilty of armed robbery is now set aside, and the judgment of imprisonment is vacated on the robbery charge.

On the charge of murder in the first degree—No ERROR.

On the charge of armed robbery—VERDICT SET ASIDE,

JUDGMENT VACATED.