STATE OF NORTH CAROLINA v. RICHARD M. NORWOOD, JR.

No. 79

(Filed 2 March 1976)

1. **Kidnapping § 1— sufficiency of indictment**
    An indictment alleging that defendant "unlawfully, wilfully, did feloniously and forcibly kidnap" a named person was sufficient to charge the offense of kidnapping, it being unnecessary for the indictment to allege that the victim was forcibly carried away against her will.

2. **Burglary and Unlawful Breakings § 3— burglary indictment — felony intended**
    While an indictment for burglary must specify the particular felony which defendant intended to commit at the time of the breaking and entering, the felony intended need not be set out as fully and specifically as would be required in an indictment for the actual commission of the felony, it being enough to state the offense generally and to designate it by name.

3. **Burglary and Unlawful Breakings § 3— burglary indictment — sufficiency**
    Indictment was sufficient to charge the crime of first degree burglary where it alleged that at 2:00 a.m. on a specified date defendant feloniously and burglariously broke and entered the dwelling house occupied by a named person "with intent to kidnap the said" person.

4. **Criminal Law § 42— kidnapping — handcuffs used by defendant — admissibility**
    The trial court in a kidnapping case properly admitted into evidence handcuffs which defendant placed on the victim's wrists where the victim identified them as the handcuffs used by defendant, notwithstanding the victim did not say they were in substantially the same condition as when defendant used them.

APPEAL by defendant under G.S. 7A-27(a) from *Cana-day, J.,* 28 July 1975 Session of ORANGE Superior Court, docketed and argued as case No. 109 at the Fall Term 1975.

Defendant was tried upon two bills of indictment. One charged that about 2:00 a.m. on 4 June 1975 defendant feloniously and burglariously broke and entered the dwelling house occupied by Susan Brogden "with intent to kidnap the said Susan Brogden." The other alleged that, in Orange County, on 4 June 1975, defendant "unlawfully, wilfully, did feloniously and forcibly kidnap Susan Brogden."

The testimony of the prosecuting witness, Susan Brogden, tended to show the facts summarized below:

Miss Brogden, aged 22, had known defendant for approximately four years prior to 4 June 1975. The two had lived together "off and on" from about Easter 1972 until August 1974, when she attempted to terminate their association finally. During the preceding two and one-half years during which they "went steady" theirs had been "an up and down, sort of tempestuous relationship"—characterized by much quarreling, several fights, and numerous temporary separations.

After their separation Miss Brogden and defendant continued to have difficulties. On several occasions he pressed her to renew their relationship. Once he came to the house in which she was then living and removed some of her clothes. He was persuaded to return them by her threats to go to the police. Sometime later, when the two encountered each other in a Chapel Hill bar, defendant began to argue with Miss Brogden about returning to him. A fight ensued in which he hit her and pulled her hair.

As a result of this encounter Miss Brogden brought criminal charges against defendant for assault. He was placed in jail and later released on bail. Upon his release he immediately went to the house where Miss Brogden was living with a friend. Unknown to Miss Brogden he spent the night there in another room. When she left for work the next morning on her bicycle he followed her, insisting that she drop the charges against him, asking her to return to him, and throwing rocks at her. None of the rocks hit her.

The chronology of subsequent events is not clear. It seems, however, that shortly thereafter Miss Brogden moved into a

house of her own, a farmhouse. Defendant went there four times in an unsuccessful effort to persuade her to return to him. On one of these occasions he hit and choked her. She again swore out a warrant charging him with assault, and this charge was pending in the District Court in June 1975.

On the night of 3 June 1975 defendant telephoned Miss Brogden and asked her to drop the assault charges against him. She refused. Before retiring that night she latched the screen door to her house and propped a chair against the hardwood inner door, which would not lock.

Between 2:00 and 2:30 a.m. Miss Brogden was awakened by the sound of breaking glass. She heard the hardwood door being pushed open, and she saw defendant enter the house. He approached her carrying a .22 rifle. After handcuffing her hands behind her back he pulled her from the bed and told her she was coming with him. Although she was wearing only a nightgown defendant refused to allow Miss Brogden to dress. He told her he would hit her with the gun if she screamed. Then, carrying the rifle, defendant grasped her by the left arm and walked her a block and a half to his car. There he directed her to get into the back seat. He then got into the driver's seat, put the rifle down beside him, and told her if she was not in court to testify "they" wouldn't do anything to him. For that reason, he said he thought he would just get rid of her; that he was going to throw her into a well and leave her. He told her this several times and she became hysterical.

After driving several miles, defendant turned into a dirt road near the Haw River and stopped the car near a one-lane bridge known as "Chicken Bridge." After producing a paper bag containing a second pair of handcuffs he told Miss Brogden he was going to handcuff her ankles as well as her hands and throw her into the river.

Fearing for her life, Miss Brogden told defendant that she would not only drop the charges against him but she would also come back to live with him. When he accused her of lying she assured him she really loved him, but she was just not yet ready to settle down. At this point defendant put the rifle and the additional pair of handcuffs into the trunk of the car and then removed the handcuffs from Miss Brogden's wrists. He directed her to get into the front seat, and there they had sexual relations. Afterwards defendant drove to the bridge and stop-

ped. In a joking manner he said he did not believe what she had said and that he was going to throw her off the bridge. She told him that she had been truthful and that he would not have to drown her. Defendant replied that he could not have lived with himself had he done anything like that to her.

From the bridge defendant drove to a deserted farmhouse where he showed her the well into which he had threatened to put her. The well was covered with box springs over which the hood of a car had been placed. He lifted up the hood and had Miss Brogden look down into the well. From there he drove her to his house trailer about eight miles from Chapel Hill. Arriving about 5:00 a.m., the two went inside. Defendant took with him the handcuffs which he had earlier placed on Miss Brogden. They went to bed and slept until after 7:00 a.m. From then until about 2:00 p.m. they just "sat around and talked." During this time Miss Brogden several times asked defendant to take her home so that she could go to work. He said No but said she could take his car and go get her clothes. She refused this offer.

Finally, Norma Davis, Miss Brogden's friend who had once been defendant's wife, came to his trailer looking for her. Miss Brogden's employer, who had become apprehensive when she did not come to work, called Mrs. Davis and reported her absence. When Mrs. Davis ascertained from defendant's employer that he was absent from work she found out where he lived and went there. Mrs. Davis took Miss Brogden back home, and Miss Brogden went to work at 5:00 p.m. After leaving work shortly before 7:00 p.m. Miss Brogden went to the office of a magistrate and charged defendant with burglary and kidnapping. The next day she gave a statement to Detective Horton of the Orange County Sheriff's Department and accompanied him over the route which defendant had taken her the night of June 4th. She also went with him to the home of Mrs. Davis to get the handcuffs defendant had used.

The State also called Detective James Horton as a witness. For the purpose of corroborating Miss Brogden's testimony he related to the jury what she had told him on 5 June 1975 about defendant's conduct the night before. His account of his interview with her tended to corroborate Miss Brogden. He also testified that, following her directions, he found the well which, she said, defendant had shown her on the night of June 4th. It was "a rock-wall well" at the rear of an abandoned farm-

State v. Norwood

house. There was no curb around the well; an automobile hood was lying across it. From the well Miss Brogden took Detective Horton to defendant's trailer and then to the home of Mrs. Davis, who gave him a pair of handcuffs which, she said, she had removed from a night stand by the bed in defendant's mobile home the day before. Miss Brogden testified that these handcuffs, which had on them the name "Detective Romo," were those which defendant had used on her the night of June 4th.

At the conclusion of the State's evidence, which consisted of the testimony of Miss Brogden and Detective Horton, defendant's motions for nonsuit were overruled, and he elected to offer no evidence. After hearing the arguments of counsel and the charge of the judge, the jury returned verdicts that defendant was guilty of first-degree burglarly and kidnapping. Upon defendant's conviction of first-degree burglary, the judge imposed a life sentence; upon his conviction of kidnapping, the judgment was that he be imprisoned for not less than 25 nor more than 30 years.

From the life sentence defendant appealed directly to this Court as a matter of right and, under G.S. 7A-31(a), we certified his conviction of kidnapping to this Court for initial appellate review.

*Attorney General Rufus L. Edmisten and Assistant Attorney General Ann Reed for the State.*

*Winston, Coleman and Bernholz by Barry T. Winston and J. William Blue, Jr., for defendant appellant.*

SHARP, Chief Justice.

[1] Defendant's first two assignments of error challenge the sufficiency of the kidnapping and burglary indictments, set out in pertinent part in the preliminary statement of facts. At the trial defendant made no motion to quash, but he now argues that both indictments are defective and violative of N. C. Const. art. I, §§ 22 and 23 because neither sets forth the essential elements of the crime of kidnapping. His argument is that the indictments should have charged that Susan Brogden was forcibly carried away against her will. This argument is without merit; past decisions have rejected it.

Since the conduct charged occurred prior to 1 July 1975, the indictment upon which defendant was tried for kidnapping

was drawn under G.S. 14-39 (1969), which made kidnapping a felony, providing in pertinent part: "It shall be unlawful for any person . . . to kidnap . . . any human being. . . ." (We here note that, effective 1 July 1975 G.S. 14-39 was rewritten by N. C. Sess. Laws, ch. 843 (1975), codified in N. C. Gen. Stats. vol. 1B, (Supp. 1975).)

In *State v. Penley,* 277 N.C. 704, 178 S.E. 2d 490 (1971), this Court held essentially the same language used in the present indictment sufficient to charge the crime of kidnapping. Justice Huskins, writing for the Court, after noting that the bill of indictment was drawn in the words of G.S. 14-39, which punished kidnapping without defining the word, said: "This is sufficient. If an indictment charges the offense in a plain, intelligible, and explicit manner and contains averments sufficient to enable the court to proceed to judgment, and to bar a subsequent prosecution for the same offense, it is sufficient. (Cites omitted.) An indictment for a statutory offense is sufficient as a general rule when it charges the offense in the language of the statute. (Cites omitted.)

"In *State v. Turner,* 268 N.C. 225, 150 S.E. 2d 406 (1966), a bill of indictment charging that defendant 'unlawfully, wilfully, feloniously and forcibly did kidnap' a named person was held sufficient to withstand a motion to quash, since the word 'kidnap' has a definite legal meaning. It follows, therefore, that defendant's challenge to the sufficiency of the bill of indictment in this case is without merit and is overruled. We think the bill adequately informed defendant of the charge against him and that he understood it." *State v. Penley, supra* at 707-08, 178 S.E. 2d at 492. *See also State v. Roberts,* 286 N.C. 265, 210 S.E. 2d 396 (1974) ; *State v. Lowry,* 263 N.C. 536, 539-40, 139 S.E. 2d 870, 873 (1965).

Thus, we hold that the indictment in the present case was sufficient to support the conviction for kidnapping.

[2, 3] The essential averments of a burglary indictment are set out in *State v. Cooper,* 288 N.C. 496, 219 S.E. 2d 45 (1975) and *State v. Allen,* 186 N.C. 302, 119 S.E. 504 (1923). The indictment for burglary must specify the particular felony which the defendant is alleged to have intended to commit at the time of the breaking and entering, and it is not sufficient to charge generally an intent to commit an unspecified felony. However the felony intended need not be set out as fully and specifically

as would be required in an indictment for the actual commission of that felony. It is enough to state the offense generally and to designate it by name. *See also* 12 C.J.S. *Burglary* § 32 (1938). Under these rules the burglary indictment here was clearly sufficient.

[4] Defendant's final assignment of error asserts that the trial court committed prejudicial error in admitting into evidence the handcuffs which defendant placed on Miss Brogden's wrists. His contention is that the State failed to prove "a proper chain of custody and failed to show that the handcuffs were in substantially the same condition as they were when defendant used them." At the outset we note that defendant did not object to the admission of the handcuffs when offered, and the settled rule is that the failure to make an objection waives it. 1 Stansbury's North Carolina Evidence § 27 (Brandis Rev. 1973). However, we also note that the assignment of error has no merit; the handcuffs were properly admitted.

Miss Brogden testified that she would recognize the handcuffs that had been used to shackle her. When she was shown a pair of handcuffs marked as State's Exhibit No. One she said: "I recognize the handcuffs and believe them to be the same ones that Ricky [defendant] put on my hands that night. I believe that these are the handcuffs that he used on me that night because they say Detective Romo on them." Detective Horton also testified without objection that State's Exhibit One was the handcuffs he had received from Mrs. Davis, who told him she had taken them from a night stand by the bed in defendant's mobile home "when she went to get Susan."

The rule as to the admissibility of demonstrative evidence such as the handcuffs here is succinctly stated in 1 Stansbury's North Carolina Evidence § 118 (Brandis Rev. 1973): "So far as the North Carolina decisions go any object which has a relevant connection with the case is admissible in evidence, in both civil and criminal trials. Thus, weapons may be admitted where there was evidence tending to show that they were used in the commission of a crime or in defense against an assault. In cases of homicide or other crimes against the person, clothing worn by the defendant or by the victim is admissible if its appearance throws any light on the circumstances of the crime. . . ."

*State v. Fuller,* 270 N.C. 710, 155 S.E. 2d 286 (1967) is cited in support of these propositions. In that case, although

defendant was awarded a new trial on a different ground, the Court overruled defendant's exception to the admission of a baseball bat which was the alleged murder weapon. The Court said: "The defendant challenges the admission into evidence of the baseball bat, saying there was 'no corroborating evidence connecting the defendant with the exhibit.' However, an eyewitness to the event identified it as being the one used by Fuller to strike Jenkins. This alone made it admissible as an exhibit. No corroborating evidence is required." *Id.* at 712, 155 S.E. 2d at 287.

In the present case the victim, an eyewitness, identified State's Exhibit One as the handcuffs defendant used to bind her hands. The handcuffs were clearly relevant and the witness's identification of them was enough to make them admissible notwithstanding the fact that she did not say they were in substantially the same condition as when defendant used them. *See State v. Williams,* 288 N.C. 680, 220 S.E. 2d 558 (1975). The handcuffs, made of materials relatively impervious to change, were sufficiently identified by the witness and the trial court did not err in admitting them. Defendant's contention could easily have been met at trial if he had objected on the grounds he presently asserts.

In the trial below we find

No error.