STATE OF NORTH CAROLINA v. MICHAEL WAYNE MOORE

No. 637A82

(Filed 28 August 1984)

**Criminal Law § 163— failure to object to instructions at trial—waiver of appellant review—no "plain error"**

Defendant waived appellate review of instructions in a prosecution for first-degree sexual offenses by failing to object at trial, and no "plain error" appeared in the detailed explanation of the elements of first-degree sexual offense.

Justice EXUM dissenting.

Justice MEYER concurring.

Justice MITCHELL and Justice MARTIN join in this concurring opinion.

APPEAL from judgments of *Judge Hal H. Walker* at the 30 August 1982 Criminal Session of GUILFORD Superior Court after defendant was found guilty by a jury of six charges of first

degree sexual offense. The judgments imposed a sentence of life imprisonment for each conviction. Defendant appeals pursuant to N.C. Gen. Stat. § 7A-27(a).

*Rufus L. Edmisten, Attorney General, by Richard L. Kuchar-ski, Assistant Attorney General, for the State.*

*Locke T. Clifford and Michael R. Nash, for defendant ap-pellant.*

COPELAND, Justice.

The principal question presented by this appeal is whether the trial court clearly instructed the jury on the applicable law so that the verdicts were the result of proper application of that law to the facts as the jury found them.

We believe that the answer to that question must be determined on the basis of whether or not Judge Walker committed "plain error" in the jury charge. We conclude that he made no such "plain error."

The State relied principally upon the evidence of Danny Pruitt who was in an eight-man cell in the Greensboro jail on 1 April 1982. Pruitt had originally been imprisoned for breaking and entering and larceny on 21 May 1981, but was charged with escape when he failed to report after work release on 13 November 1981. After the escape charge was resolved he was sent to the Greensboro jail to await transfer to a prison camp. In the cell with Pruitt were defendant; defendant's brother, Jerry Moore; Sammy Buchanan; James Hodge; Curtis Davis; Sylvester Barnes; and Clifford Belo. All these men were awaiting transfer to various prison facilities.

Witnesses for the State included Pruitt, the victim; Hodge; Davis; Belo; and Barnes. Defendant testified in his own behalf as did his brother, Jerry. The State's evidence and defendant's evidence were in extreme conflict. There is even some conflict among the versions of events given by the State's witnesses.

Pruitt testified that on the evening of 4 April 1982 the following events occurred in the jail cell where the men were placed: Defendant and his brother, Jerry, began pushing him and beating him with their fists while he was playing solitaire. Defendant,

Jerry Moore, and Buchanan, each in turn and aided by the others, forcibly and against Pruitt's will, engaged in anal intercourse with Pruitt. Pruitt was then allowed to use the bathroom. Then defendant and Jerry Moore, each in turn and aided by the other, forcibly made Pruitt engage in fellatio with them by threatening to stab Pruitt in the ear with an ink pen. They then permitted Pruitt to take a shower.

The other witnesses gave various versions of the testimony previously related.

Defendant testified he never engaged in any sexual activity with Pruitt. Jerry Moore, brother of this defendant, admitted having pled guilty to six second degree sex offenses against Pruitt and having received a total prison sentence of forty years.

The crucial issues in this case are whether defendant has waived appellate review of the instructions given by Judge Walker by failing to object at trial and, if not, whether the instructions to the jury were proper. We conclude, by failing to object at trial, appellate review has been waived.

In North Carolina Rule of Appellate Procedure 10(b)(2) the following requirement for appellate review is set forth:

(2) Jury Instructions; Findings and Conclusions of Judge. No party may assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly that to which he objects and the grounds of his objection; provided, that the opportunity was given to the party to make the objection out of the hearing of the jury and on request of any party, out of the presence of the jury.

This requirement was effective for trials beginning on and after 1 October 1981.

Specifically, North Carolina Rule of Appellate Procedure 10(b)(2) prevents a party from assigning "as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict. . . ." Because of the rule's technical exclusionary effect, we mitigated the harshness of the rule in *State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983). In *Odom*, we did this by adopting the "plain error" rule

which permits review of a very narrow range of errors notwithstanding a defendant's failure to object at trial to the jury charge. Even as we adopted the "plain error" rule, however, we cautioned that:

> (T)he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *'fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' or 'where [the error] is grave error which amounts to a denial of a fundamental right of the accused,' or the error has ' "resulted in a miscarriage of justice or in the denial to appellant of a fair trial" ' or where the error is such as to 'seriously affect the fairness, integrity or public reputation of judicial proceedings' or where it can be fairly said 'the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.'

*Id.* at 660, 300 S.E. 2d at 378 (quoting *United States v. McCaskill,* 676 F. 2d 995, 1002 (4th Cir. 1982) (footnotes omitted) (emphasis original). In contemplation of these definitions, we must conclude that no plain error appears.

For purposes of guidance during closing arguments by the attorneys and during the trial court's jury instructions, Judge Walker distributed to each of the jurors copies of the six verdict sheets specifying the specific six charges against the defendant. Each verdict sheet bearing the numbered charge included a brief explanation as to the defendant's role as principal or aider and abettor, as well as the specific sexual offense committed and the person victimized. The following information was before the jury:

VERDICT (82CRS27312):      Principal
                           Anal Sex
                           Pruitt

VERDICT (82CRS27313):      Principal
                           Oral Sex
                           Pruitt

VERDICT (82CRS15754):      Aiding and abetting
                           Jerry Moore
                           Anal Sex
                           Pruitt

VERDICT (82CRS15755):        Aiding and abetting
                             Jerry Moore
                             Anal Sex
                             Pruitt

VERDICT (82CRS15756):        Aiding and abetting
                             Jerry Moore
                             Oral Sex
                             Pruitt

VERDICT (82CRS15757):        Aiding and abetting
                             Sammy Buchanan
                             Anal Sex
                             Pruitt

Having distributed the foregoing to each juror he instructed them in pertinent part as follows:

Now, in these six cases, members of the Jury, and you may use those copies if you want along in this charge, I want to tell you first that you will treat each case separate. By that, I mean that you may find the Defendant not guilty in all six cases, you may find him guilty in all six cases, you may find him guilty of one of the two offenses for which you will render a verdict in part of the cases, and not guilty in part of the others, and so I want to, at the beginning, tell you that you will treat each case separately even though, in my recapitulation, I will group them together for that purpose. But when I charge you as to the law and what the law is, please bear in mind through your deliberations and during my presentation to you of the law that you must consider each case on its own and render a separate verdict in each particular case.

Now, . . . you will find at the top of 27312, that the Defendant is charged with the principal of committing anal sex on the prosecuting witness, Danny Pruitt. You will also find that in 82CRS27313, the Defendant, Michael Moore, is charged as a principal in the commission—alleged commission of oral sex on the prosecuting witness, Danny Pruitt. The other four cases, 15754, the Defendant stands charged with aiding and abetting Jerry Moore in the commission of anal sex between Jerry Moore and Danny Pruitt; and 82CRS-

15755, he is charged with the commission of aiding and abetting Jerry Moore in another charge of the commission of anal sex between Jerry Moore and Danny Pruitt; in 82CRS15756, the charge is aiding and abetting Jerry Moore in the commission of an act of oral sex with Danny Pruitt; and in the last case, 82CRS15757, the commission of aiding and abetting Sammy Buchanan in the commission of an anal sex act with Danny Pruitt. You will notice that the possible verdicts are the same in each case. There are three possible verdicts, guilty of first degree sexual offense, or guilty of second degree sexual offense—and I will tell you the difference—or not guilty. . . .

Now, members of the Jury, in each of these cases, the Defendant, Michael Moore, has been accused of first degree sexual offense, the first possible verdict on each one. I charge you that for you to find the Defendant in each case guilty of first degree sexual offense, the State of North Carolina must prove four things beyond a reasonable doubt.

First, that the Defendant, Michael Moore, engaged in the particular sexual act that you are considering, whether it be the charge of an anal act or an oral act, between the Defendant and Danny Pruitt. . . .

Secondly, that the Defendant, Michael Moore, did or threatened to use force sufficient to overcome any resistance that Danny Pruitt might make.

Third, that Danny Pruitt, the alleged victim, did not consent to an act of sexual activity such as the particular one that you are considering at the time, and that it was against his will. . . .

Fourth, that the Defendant, Michael Moore, employed or displayed a dangerous or deadly weapon. . . .

Now, . . . serious injury means that if a person is injured to the extent that treatment and/or hospitalization is required or medical attention, then you may consider that in determining whether or not there is serious injury existing in the case, or, members of the Jury, if you find that the Defendant committed any of these acts, the particular act that

you are considering, and if he was aided and abetted by one or more other persons.

Now, a Defendant would be aided or abetted by another person if that person, whichever one you are considering, and the names are on there, was present at the time the sexual offense was committed and if that particular person allegedly involved knowingly advised or encouraged the Defendant or if they aided him to commit the particular alleged crime you are considering at the time, then the particular individual involved, if you find that he shares the Defendant's criminal purpose to the Defendant's knowledge, then you can find that the person was aiding, or was in a position to aid him at the time the alleged sexual offense was committed.

Now, members of the Jury, as to the aiding and abetting of the three cases charged against this Defendant, 15755, aiding and abetting Jerry Moore; 15756, aiding and abetting Jerry Moore, 55 being the alleged anal act and 56 being the alleged oral act; and 15757, again, aiding and abetting Buchanan in an anal act, the Court instructs you that a person, in this case, the Defendant, may be guilty of the crime that you are considering, the alleged crime, although he personally did not do any of the acts which I have just finished telling you are necessary to constitute a sexual offense. A person who aids and abets another, in these particular cases you are considering either Jerry Moore or Buchanan, is guilty of that crime. You must clearly understand that if the Defendant, Michael Moore, does aid and abet within the meaning of the law, he is guilty of the act charged against the other person, a sexual offense act, just as if he personally had done all the acts necessary to constitute that crime.

So I charge you that for you to find the Defendant, Michael Moore, guilty of a sexual offense in the three cases because of aiding and abetting, the State must prove beyond a reasonable doubt, first, that the sexual offense was committed by Jerry Moore as to those two cases in which his name appears on the copy, and Sammy Buchanan in 15757; that it was committed by that one that you are considering in each case. Secondly, that the Defendant, Michael Moore, advised or encouraged or aided the particular party charged in that

case and those other companion cases, either Jerry Moore or Buchanan when you are considering that, to commit that crime. . . .

So as to these three cases involving the alleged aiding and abetting of his brother, Jerry Moore, two in that case, and one with Sammy Buchanan, the Court charges you that if you find from the evidence and beyond a reasonable doubt that . . . Michael Moore did commit the act of sexual offense, and that with Jerry Moore when you are considering those two cases or Sammy Buchanan when you are considering that one, did knowingly encourage or aid Jerry Moore and Sammy Buchanan to commit the crime of sexual offense, it would be your duty to return a verdict of guilty of a sexual offense, one of the two sexual offenses in which you are considering; two as to Jerry Moore and one as to Sammy Buchanan. But if you do not so find or if you have a reasonable doubt as to one or more of these things that I have just enumerated to you, it would be your duty to return a verdict of not guilty.

Now, members of the Jury, as to the possible verdicts, again I charge you that if you find from the evidence and beyond a reasonable doubt that on or about the 5th of April, 1982, Michael Moore engaged in a sexual act, as I have defined that, with Danny Pruitt and that he did so as to these two substantive cases, 27312 and 27313, or in the other — Well, I said two cases against Jerry. There are three cases against Jerry, two anal charges and one oral charge; and one against Sammy Buchanan.

Again, I instruct you that if you find that the Defendant, Michael Moore, did participate in and engage in and did meet the essentials and the requirements, as I have defined to you, with Danny Pruitt on this day in question and that he did so by actually having these sex acts with Pruitt; and as to the three cases involving Jerry Moore and the one allegedly involving Sammy Buchanan by aiding and abetting them, as I have defined that; . . . and the Court instructing you further that the State of North Carolina need not show a deadly weapon if you find beyond a reasonable doubt that the defendant, Michael Moore, was aided and abetted by the particular individual involved in the case you are considering

beyond a reasonable doubt, that is all as to that number four essential that the State must prove. So then if you find that these existed beyond a reasonable doubt, all of the elements, it would be your duty to return a verdict in the case you are considering of guilty of first degree sexual offense, which is the first possible verdict on each one.

But if you do not so find or if you have a reasonable doubt as to one or more of the essentials and the elements that I have outlined to you, you would not return a verdict of guilty of first degree sexual offense, but would consider the second possible verdict in each case, which is as to whether or not the Defendant is guilty of second degree sexual offense. . . .

But if you do not so find or if you have a reasonable doubt as to one or more of the elements and essentials I have spelled out to you, it would be your duty to return in that case you are considering a verdict of not guilty.

We realize that in cases, such as this one, involving multiple defendants and multiple offenses, there exists the possibility of confusion among the jurors. In light of the situation, we believe Judge Walker adequately guided the jury on the appropriate legal principles necessary to their decision. The court provided the jury with a detailed explanation of the elements of first degree sexual offense. Included in that charge was a clarification of how the "aiding and abetting" element relates to the first degree sex offense, as well as an instruction with regard to the remaining charges against defendant involving aiding and abetting the co-defendants.

We do not believe as defendant contends that the trial judge's charge could have been interpreted by the jury as requiring it to find that the defendant personally engaged the victim in each of the six sexual offenses in order to find him guilty of each of those charges. The trial judge supplied each juror with a list of the charges against the defendant specifying in which cases the State sought to show that the defendant personally engaged in the sexual offense charged and those in which he acted as an aider and abettor. Even if it is assumed *arguendo* that the jury interpreted the charge as the defendant now argues, the error would seem to have been more favorable to the defendant, as it

required the State to prove more than it was required by law to prove in order to sustain these convictions. When such an erroneous instruction is beneficial to the defendant, a new trial is not to be awarded. *State v. Cox*, 303 N.C. 75, 277 S.E. 2d 376 (1981).

When stripped of artificial complexity, the evidence in this case presented the jury with a straightforward and simple choice. If the jury believed the testimony of the victim Pruitt and the other State's witnesses, then the jury was required to return verdicts of guilty on all charges against the defendant. On the other hand, if the jury believed the defendant and his brother and disbelieved the State's witnesses, then the jury was required to find the defendant not guilty. These would have been the choices the jury faced in any event without regard to the instruction. Clearly, the outcome of the trial rested upon the witnesses' credibility.

We recognize that the defendant was represented at trial by an able and experienced attorney, who has been practicing at the Bar of Guilford County and other counties of the State as well as in the Appellate Division for more than twenty-five years. Being experienced, he probably recognized that the real question for the jury was a simple question of the credibility of witnesses. Recognizing this fact, this able and experienced attorney certainly would have been justified in concluding that it would be a sound trial tactic not to object to the jury charge. Counsel certainly would have recognized that such a tactic could well have served the defendant's interests, since a lack of clarity in the jury instructions might very well have led to confusion, possibly resulting in a hung jury or an acquittal, even though the jury disbelieved the defendant and believed the State's witnesses.

Defendant raises additional assignments of error with regard to the trial court's charge to the jury. Again, we note that defendant did not bring these matters to the attention of the trial court during the trial. After close consideration of these issues, we find that the errors, if any, do not rise to the level of "plain error."

We must conclude that the instructions of the trial judge to the jury did not amount to fundamental error so prejudicial that justice could not have been done. Neither did the instructions amount to a denial of a fundamental right of defendant or result in a miscarriage of justice or the denial of a fair trial. We do not

believe that any mistake in the instructions had a probable impact on the jury's finding that the defendant was guilty of the crimes charged. *See: State v. Odom*, 307 N.C. at 600, 300 S.E. 2d at 378. Whether "letter perfect" instructions were given, or those that were actually given by Judge Walker, we believe the jury in this case would have reached the same result for or against the defendant based upon whether it believed Pruitt or believed the defendant.

Defendant finally challenges the trial court's refusal to allow him to ask the prosecuting witness certain questions with respect to a civil lawsuit the prosecuting witness intended to file. The record reveals that the trial court permitted defendant to make a reasonable inquiry into the prosecuting witness's pecuniary interest in the outcome of this case. The well-established rule is that trial judges have wide latitude in determining the questions allowed on cross-examination. Their rulings will not be held to be prejudicial error in the absence of a showing that the verdict was improperly influenced by his ruling. *State v. Edwards*, 305 N.C. 378, 289 S.E. 2d 360 (1982). We hold that no prejudicial error resulted.

The trial and judgment in all respects is free from prejudicial error.

No error.

Justice EXUM dissenting.

Believing that fundamental, or "plain," error occurred in the jury instructions as this concept was defined in *State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983), I respectfully dissent.

The first error in the instructions flows from a variance between the factual basis of defendant's guilt specified in the indictments and the instructions.

In the instant case all six indictments specify that defendant committed "a sexual act with . . . Pruitt by force and against that victim's will, *aided and abetted by one or more other persons*, in violation of the following law: G.S. 14-27.4." (Emphasis supplied.) Thus, the prosecutor specified in the indictments the particular factual basis by which he planned to prove the offenses. Further,

the prosecutor informed the trial court at the close of the state's evidence that the acts forming the bases of the charges against defendant were as follows:

| | |
|---|---|
| Case No. 82CRS27312: | Act of anal intercourse by defendant |
| Case No. 82CRS27313: | Act of oral sex by defendant |
| Case No. 82CRS15754: | Aiding and abetting Jerry Moore in act of anal intercourse |
| Case No. 82CRS15755: | Aiding and abetting Jerry Moore in act of anal intercourse |
| Case No. 82CRS15756: | Aiding and abetting Jerry Moore in act of oral sex |
| Case No. 82CRS15757: | Aiding and abetting Sammy Buchanan in act of anal intercourse. |

By reading the indictments together with the prosecutor's list of the facts sought to be proved under each charge, the ultimate facts alleged and sought to be proved by the state are as follows: In one case defendant, aided and abetted by others, engaged in anal intercourse with Pruitt by force and against Pruitt's will. In the second case defendant, aided and abetted by others, made Pruitt perform oral sex on him by force and against his will. These two offenses were first degree offenses because defendant was "aided and abetted by one or more other persons." N.C. Gen. Stat. § 14-27.4(a)(2)c. In four of the cases defendant was not the principal in the first degree; rather he *was* an aider and abettor, or a principal in the second degree. As such his guilt was equal to that of the person actually committing the sexual act.[1]

---

1. This Court has explained the relationship between a principal in the first degree and an aider and abettor as follows: "A principal is one who is present at and participates in the commission of the crime charged. He who actually perpetrates the crime either by his own hand or through an innocent agent, or who

Jerry Moore forced Pruitt to engage in two acts of anal intercourse and to perform one act of oral sex. Sammy Buchanan forced Pruitt to engage in one act of anal intercourse. Because Jerry Moore and Buchanan were aided and abetted by others, including defendant, when they committed the sexual acts, they are guilty of first degree sex offenses in all four cases. Thus, defendant is guilty of four counts of first degree sex offense because he aided and abetted Buchanan and Jerry Moore in their commission of these first degree sex offenses. *See State v. Polk,* 309 N.C. 559, 567-70, 308 S.E. 2d 296, 300-02 (1983).

By alleging in the indictments the factual basis by which the state would seek to prove the first degree sex offenses, *i.e.,* their commission was aided and abetted by others, the prosecutor limited the state to that factual basis at trial, even if the evidence might have supported other theories of guilt. *State v. Taylor,* 301 N.C. 164, 270 S.E. 2d 409 (1980); *State v. Dammons,* 293 N.C. 263, 237 S.E. 2d 834 (1977). Yet in this case the trial court instructed the jury that it could return verdicts of guilty as charged in all the cases if, among other things, it found that defendant used a deadly weapon *or* inflicted serious personal injury on Pruitt *or* was aided and abetted by other persons. This instruction was erroneous even if such theories might have been supported by the evidence.

In *Taylor* we held that instructions to the jury on a kidnapping charge were erroneous because they "allowed the jury to convict on grounds other than those charged in the indictment." The instructions in *Taylor* presented several possible theories of conviction which were not charged in the bill of indictment. "The State's theory, under the bill of indictment, was that defendant had unlawfully removed [the victim] from one place to another for the express purpose of facilitating his flight from the commission of the felony of rape." *Id.* at 171, 270 S.E. 2d at 414. The Court

acts in concert with the principal perpetrator, is a principal in the first degree. Any other person who is actually or constructively present at the place and time of the crime and who aids, abets, assists, or advises in its commission, is a principal in the second degree. Principals in the first degree and those in the second degree are equally guilty of the offense committed and may be punished with equal vigor." *State v. Small,* 301 N.C. 407, 412-13, 272 S.E. 2d 128, 132 (1980) (footnote omitted). *See also State v. Benton,* 276 N.C. 641, 174 S.E. 2d 793 (1970); *State v. Powell,* 168 N.C. 134, 83 S.E. 310 (1914).

held it was prejudicial error for the trial court to instruct that the jury should convict if it found "the defendant confined or restrained [the victim] for the purpose of facilitating his flight from apprehension for another crime, or to obtain the use of her vehicle," *id.* at 170-71, 270 S.E. 2d at 412-13 (emphasis omitted), even though there was evidence to support the instruction.

The Court in *Dammons* dealt with another kidnapping case in which the defendant was indicted for "unlawfully, wilfully, and feloniously kidnap[ping the victim] . . . by unlawfully removing her from one place to another, for the purpose of facilitating the commission of a felony, to wit: Assault With a Deadly Weapon, With Intent to Kill, Inflicting Serious Injury, for the purpose of doing serious bodily injury to her, and for the purpose of terrorizing her." *Id.* at 269, 237 S.E. 2d at 838-39. The trial court, however, instructed the jury it could find defendant guilty of "aggravated kidnapping" if it found he "unlawfully *confined* or *restrained* or removed [the victim] and that when he did so, that he did it for the purpose of committing an assault, a felonious assault, that he did so for the purpose of *either assaulting her sexually* or assaulting her with a shotgun . . . ." *Id.* at 271, 237 S.E. 2d at 840 (emphases in original). When the jury asked for further instructions, the trial court charged that the state must prove "that this defendant did *confine or restrain* in some manner or remove from one place to another [the victim] and the defendant did this unlawfully, and . . . that *he did this for the purpose of holding this girl as a hostage* . . . ." *Id.* at 272, 237 S.E. 2d at 840 (emphases in original).

The Court in *Taylor* and *Dammons* applied the rule that it is generally reversible error for the trial court to permit the jury to convict a defendant on an abstract legal theory not supported by the indictment. *See also State v. Thorpe*, 274 N.C. 457, 164 S.E. 2d 171 (1968); *State v. Davis*, 253 N.C. 86, 116 S.E. 2d 365 (1960); *State v. Jones*, 227 N.C. 94, 40 S.E. 2d 700 (1946). *But see State v. Moore*, 284 N.C. 485, 202 S.E. 2d 169 (1974).

In *Moore* the indictment charged that defendant "unlawfully, willfully, feloniously and of his malice aforethought did kill and murder William J. Casey with premeditation and deliberation. . . ." This indictment was joined for trial with another indictment charging defendant with the armed robbery of William J. Casey.

Both crimes were alleged to have been committed on 1 January 1973. The Court held under these circumstances that it was not error for the trial court to instruct the jury that it could convict defendant of first degree murder on theories of both felony murder and premeditation. The Court treated the language "with premeditation and deliberation" in the murder indictment as mere surplusage since the indictment also alleged the murder was committed "with malice aforethought" and this allegation would support a verdict of first degree murder under either or both theories. Before *Moore* the Court in *Davis* had said: "By specifically alleging the offense [first degree murder] was committed in the perpetration of rape the State confines itself to that allegation in order to show murder in the first degree. Without a specific allegation, the state may show murder by any of the means embraced in the statute." 253 N.C. at 99, 116 S.E. 2d at 373. In *Moore* the Court distinguished *Davis* on the ground that the *Davis* indictment did not contain the words "with malice aforethought."

In the instant case defendant had noticed by way of the indictments only that the factual basis for the first degree sexual offenses was that they were aided and abetted by others. In *Moore* defendant had notice by way of the indictments that he was charged not only with murdering William J. Casey but also with having robbed Casey with a firearm. Further, the allegation in the *Moore* murder indictment, "with malice aforethought," permitted conviction on both theories of premeditation and felony murder. There is no comparable allegation in the instant case. This case, therefore, is governed by *Taylor, Dammons, Thorpe, Davis,* and *Jones* and not by *Moore.*

It is not necessary to determine whether this error, standing alone, was of such a fundamental nature as to constitute the "plain error" necessary to overcome defendant's procedural default in failing to object at trial. The instructions on crucial aspects of the case are confusing to the extent that the jury's verdict could not have resulted from an application of appropriate legal theories to the facts.

"The chief purpose of the charge is to give a clear instruction which applies the law to the evidence in such manner as to assist the jury in understanding the case and in reaching a correct ver-

dict. *State v. Biggs*, 224 N.C. 722, 32 S.E. 2d 353 . . . ." *State v. Williams*, 280 N.C. 132, 136, 184 S.E. 2d 875, 877 (1971). Stated differently, "[t]he chief object contemplated in the charge is to explain the law of the case, to point out the essentials to be proved on the one side and on the other, and to bring into view the relation of the particular evidence adduced to the particular issue involved." *State v. Friddle*, 223 N.C. 258, 261, 25 S.E. 2d 751, 753 (1943), *quoted in State v. Ardrey*, 232 N.C. 721, 723, 62 S.E. 2d 53, 55 (1950).

In the instant case, the able trial judge fairly conducted a lengthy trial. He attempted to impress upon the jury that it must consider each charge against defendant separately from the others in determining his guilt or innocence. He even provided each juror with a list of the charges, giving the possible verdicts in each case and specifying in which cases the state sought to prove defendant acted as a principal and in which as an aider and abettor.

But the trial court erred when in its final mandate it attempted to submit the ultimate question of defendant's guilt in all six offenses simultaneously. Although all six offenses were sexual ones involving the same victim, different acts and different actors were involved in each case. Each witness for the state gave a slightly different version of the events. For example, the reports differed on exactly how many sexual acts occurred and whether an ink pen was employed in given offenses. By submitting the question of defendant's guilt in all six cases simultaneously, the trial court created the possibility that the jury would consider evidence going to one offense in its deliberations on another.

This was especially prone to yield confusion in the instant case because of the particular legal theory involved. The only element on which the jury could properly be charged, for the reasons set forth above, which distinguishes first degree sex offense from second degree, is that the perpetrator was "aided and abetted by one or more other persons." This was complicated by the fact that proof of defendant's guilt in four of the cases was predicated on the theory that he was an aider and abettor of the person actually engaging in the sexual act. Clearly explaining the two different meanings of the words "aided and abetted" to a lay jury is a difficult undertaking; doing so when the cases in which

defendant acted as an aider and abettor are lumped with the cases in which he acted as a principal in the first degree appears to be impossible.

That the jury was confused is beyond question. After deliberating for an unspecified length of time the jury requested additional instructions. The following exchange is illustrative:

THE FOREMAN: If we may have a redefinition between first and second aiding and abetting.

THE COURT: There is no first and second aiding and abetting. There is aiding and abetting for either the first degree or for the second degree. It's the same definition. Aiding and abetting is the same definition whichever possible verdict you consider it.

THE FOREMAN: So it's the principal?

THE COURT: The first two cases are the principal cases.

THE FOREMAN: But the aiding and abetting where the Defendant is not the principal, it hinges on whether or not it's first degree or second degree—

THE COURT: That's correct.

THE FOREMAN: —for the person who is the principal?

THE COURT: Right.

THE FOREMAN: So aiding and abetting is aiding and abetting—

THE COURT: Either first degree if you consider that, and second degree if you reached that possible verdict.

Let me tell you this. There is no such crime in North Carolina as aiding and abetting. The fact that you may be participating by reason of aiding and abetting applies to whatever crime you are considering. If I have instructed you that you will consider aiding and abetting you consider it for all possible guilty verdicts in this case, first degree or second degree.

Does that help you? I'm afraid that's about as simple as I can get.

This Court held in *State v. Parrish*, 275 N.C. 69, 76-77, 165 S.E. 2d 230, 235-36 (1969), that where several defendants are joined for trial and "the evidence against each . . . is not identical, the trial court should submit the question of guilt or innocence of each separately." Similarly as in the instant case where several indictments are joined for trial against a single defendant and the evidence supporting each charge, as it usually will be, is different, the trial court should submit the question of defendant's guilt on each indictment separately.

Defendant failed to object at trial to either of the errors discussed above. But these two errors resulted in instructions on essential elements of the various offenses which were not authorized under our case law and which failed properly to clarify for the jury the nature of the aiding and abetting theories relied on by the state. Although under Rule 10(b)(2) of the North Carolina Rules of Appellate Procedure defendant bears the burden of objecting to the instructions, an objection in this case to any single part of the charge or to a particular omission would not have corrected the overall confused thrust of the instructions.

Under the test set forth in *Odom*, an error is "plain error" if "fundamental" or where it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings" or where "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty." 307 N.C. at 660, 300 S.E. 2d at 378 (quoting *United States v. McCaskill*, 676 F. 2d at 1002). When instructions not only lack essential clarity but also permit guilt to be predicated on theories not permitted under the indictments, they abrogate their very purpose. The purpose of jury instructions is to enable the jury to decide certain disputed facts, and then to apply governing principles of law to those facts. When the jury has no clearly explained legal principles for guidance, the integrity of the entire proceeding has been seriously compromised. Thus, the errors in the instant case considered together are "plain," and defendant should be given a new trial on all charges.

Justice MEYER concurring.

I concur fully in both the reasoning and the result reached by the majority. I file this concurring opinion for the sole purpose of addressing an issue neither raised nor argued by the defendant, but addressed in some detail by the dissenting opinion.

The dissenting opinion states that "[b]y alleging in the indictments the factual basis by which the State would seek to prove the first degree sex offense, *i.e.*, their commission was aided and abetted by others, the prosecutor limited the State to that factual basis at trial even if the evidence might have supported other theories of guilt." Thus, argues the dissent, the trial judge committed error by instructing the jury "that it could return verdicts of guilty as charged in all cases if, among other things, it found that defendant used a deadly weapon, *or* inflicted serious personal injury on Pruitt, *or* was aided and abetted by other persons." I find this conclusion legally unsupportable.

Factual allegations unnecessary to an indictment for rape or sex offense should be treated as surplusage. *See State v. Moore*, 284 N.C. 485, 202 S.E. 2d 169 (1974); *see also State v. Lewis*, 58 N.C. App. 348, 293 S.E. 2d 638 (1982) (an averment in an indictment or warrant not necessary in charging the offense should be disregarded). In *Moore*, this Court was asked to consider whether the trial judge erred in charging the jury on both the theory of premeditation and deliberation and felony murder although the indictment specified only that the murder was committed with premeditation and deliberation. We upheld the instruction based on the fact that G.S. § 15-144, authorizing the short-form indictment for homicide, would support a verdict of murder in the first degree without further allegation of premeditation and deliberation or in the perpetration or attempt to perpetrate a felony. This Court stated in *Moore* that "[a]ny allegations in a bill of indictment over and above that which is held sufficient may be treated as surplusage." *Id.* at 493, 202 S.E. 2d at 174. We cited numerous cases in *Moore* in support of this conclusion and properly distinguished *State v. Davis*, 253 N.C. 86, 116 S.E. 2d 365 (1960), a case in which the indictment *failed to allege malice*. We had held in *Davis* that "[b]y specifically alleging the offense was committed *in the perpetration of rape*, the State confines itself to that allegation in order to show murder in the first degree." *Id.* at 99, 116 S.E. 2d at 373. However, as explained in *Moore*,

Judge Campbell was correct in charging the jury in the *Davis* case that a verdict of guilty of murder in the first degree could be rendered *only* upon a finding that Davis killed Mrs. Cooper in perpetrating or attempting to perpetrate the crime of rape. Our holding in *Davis* that the State

was confined to its allegation in the indictment that the killing occurred *in the perpetration of rape was correct.* This Court could have said, but did not say, the indictment failing to charge malice, required the State to make out its case of murder in the first degree upon a showing the killing was done in the perpetration or attempt to perpetrate the crime of rape. The indictment, *omitting malice,* was insufficient to elevate the killing above the crime of manslaughter, *except for the "felony murder"* rule which Judge Campbell submitted to the jury.

*Id.* at 495, 202 S.E. 175.

Because the indictment in *Moore* fully complied with the requirements of G.S. § 15-144, it did not depend for its sufficiency upon additional factual allegations, and therefore this Court treated the additional factual allegations as surplusage.

The short-form indictment for homicide in G.S. § 15-144 is the model upon which G.S. § 15-144.1 (Essentials for a Bill of Rape) and G.S. § 15-144.2 (Essentials for a Bill of Sex Offense) were drafted. Just as we have held that an indictment for murder need not allege the theory or factual basis under which the State intends to proceed, *see State v. Duncan,* 282 N.C. 412, 193 S.E. 2d 65 (1972) (premeditation and deliberation); *State v. Smith,* 223 N.C. 457, 27 S.E. 2d 114 (1943) (felony murder), we have likewise held that indictments for rape or sex offense need not include averments (1) that the offense was perpetrated with a deadly weapon, (2) that the victim suffered serious personal injury, or (3) that the person who committed the offense was aided and abetted by one or more persons—theories under which the State might proceed to seek a first degree conviction. *See State v. Whitfield,* 310 N.C. 608, 313 S.E. 2d 790 (1984); *State v. Roberts,* 310 N.C. 428, 312 S.E. 2d 477 (1984); *State v. Effler,* 309 N.C. 742, 309 S.E. 2d 203 (1983).

G.S. § 15-144 states that "it is sufficient in describing murder to allege that the accused person feloniously, willfully, and of his malice aforethought, did kill and murder (naming the person killed). . . ." G.S. § 15-144.1 states that "it is sufficient in describing rape to allege that the accused person unlawfully, willfully, and feloniously did ravish and carnally know the victim, naming her, by force and against her will. . . ." G.S. § 15-144.2 states "it

is sufficient in describing a sex offense to allege that the accused person unlawfully, willfully, and feloniously did engage in a sex offense with the victim, naming the victim, by force and against the will of such victim. . . ." Clearly, the reasoning we applied in *Moore* respecting the short-form indictment for murder applies with equal force to G.S. § 15-144.1 and -144.2, short-form indictments for rape and sex offense. That is, an indictment which meets the statutory requirements for sufficiency need not include additional allegations of fact or theory *and, if included, these should be treated as surplusage.* Furthermore, where the evidence supports several theories of guilt authorized by statute, the trial judge may instruct on more than one theory. *See State v. Foust,* 311 N.C. 351, 317 S.E. 2d 385 (1984).

The dissent argues that the short-form indictment for murder (without any statement of which theory will be relied upon) is sufficient only because it contains the magic saving language "with malice aforethought." I argue that both G.S. § 15-144.1 and -144.2 contain comparable saving language. In G.S. § 15-144.1 the language is "unlawfully, willfully, and feloniously did ravish and carnally know" . . . "by force and against her will." In G.S. § 15-144.2 the language is "unlawfully, willfully and feloniously did engage in a sex offense . . . by force and against the will of such victim." In the instant case, each of the indictments included the necessary statutory language that the defendant "unlawfully and wilfully did feloniously engage in a sexual act with Danny Pruitt by force and against that victim's will." Thus, under the authority of *State v. Moore,* whatever additional information that was included in the indictment is surplusage and should be treated as such. As there was evidence to support not only a theory of aiding and abetting, but also that the offense was committed by use of a deadly weapon or that the victim suffered serious bodily injury, the trial judge properly instructed on these theories.

Quite obviously the cases cited by the dissenting opinion in support of its conclusion are readily distinguishable. *State v. Taylor,* 301 N.C. 164, 270 S.E. 2d 409 (1980) and *State v. Dammons,* 293 N.C. 263, 237 S.E. 2d 834 (1977) involved indictments for kidnapping. In *State v. Jerrett,* 309 N.C. 239, 259, 307 S.E. 2d 339, 350 (1983) we noted that

The established rule is that an indictment will not support a conviction for a crime unless all the elements of the crime are accurately and clearly alleged in the indictment. *State v. Perry*, 291 N.C. 586, 231 S.E. 2d 262 (1977); *State v. Taylor*, 280 N.C. 273, 185 S.E. 2d 677 (1972). The Legislature may prescribe a form of indictment sufficient to allege an offense even though not all of the elements of a particular crime are required to be alleged. *See, e.g.,* G.S. 15-144.1 (authorizing a short-form indictment for rape) and G.S. 15-144 (authorizing a short-form indictment for homicide). The Legislature has not, however, established a short-form indictment for kidnapping. Accordingly, the general rule governs the sufficiency of the indictment to charge the crime of kidnapping.

G.S. § 15A-644, under which indictments for kidnapping are now brought, unlike the short-form indictments authorized for homicide, rape and sex offense, requires that the indictment charge all the essential elements of the offenses, or with respect to statutory offense, the indictment will be sufficient as a general rule if it charges the offense in the language of the statute. *See State v. Jerrett*, 309 N.C. 239, 307 S.E. 2d 339; *State v. Norwood*, 289 N.C. 424, 222 S.E. 2d 253 (1976); *State v. Lewis*, 58 N.C. App. 348, 293 S.E. 2d 638. In fact, in *Jerrett* we held that in order to support a conviction for first degree kidnapping it was necessary to allege that the victim was not released in a safe place and was either sexually assaulted or physically harmed, G.S. § 14-39(b). In short, in order to support a conviction for first degree kidnapping the indictment must include information regarding the factual basis under which the State intends to proceed and, under the authority of *Taylor* and cases cited therein the State is limited to that factual basis at trial.[1]

The dissenting opinion also cites to *State v. Thorpe*, 274 N.C. 457, 164 S.E. 2d 171 (1968) as authority. In *Thorpe* we held that in a prosecution for first degree burglary upon an indictment charging that defendant broke and entered with a felonious intent to ravish and carnally harm the victim by force and against her will,

---

1. I would point out that while a trial judge may err in instructing on theories not alleged in an indictment for kidnapping, the error is not necessarily prejudicial. Whether the error in *Taylor* was prejudicial was not addressed in *Taylor*. My reading of that case suggests that, in fact, it was not.

State v. Moore

the trial court erred in merely instructing the jury that they must find that the breaking and entering was done "with the intent to commit a felony," it being necessary that the court charge on intent to commit a felony described in the indictment. Once again, I find *Thorpe* distinguishable. An indictment for first degree burglary, like that for kidnapping, requires specific allegations of fact to support a conviction. That is, the indictment must specify the particular felony which the defendant intended to commit at the time of the breaking and entering. *State v. Norwood*, 289 N.C. 424, 222 S.E. 2d 253. Having so specified, the State is limited to proof of that felony and it is error, although not necessarily prejudicial error, for the trial judge to instruct on a theory not alleged in the indictment.

Finally, I would add that although the information is available through a Bill of Particulars since the enactment of G.S. § 15-144.1 and -144.2, criminal defendants have consistently indicated a strong preference to be supplied in the indictment with information concerning the theory under which they will be tried. *See State v. Whitfield*, 310 N.C. 608, 313 S.E. 2d 790; *State v. Roberts*, 310 N.C. 428, 312 S.E. 2d 477; *State v. Effler*, 309 N.C. 742, 309 S.E. 2d 203; *State v. Lowe*, 295 N.C. 596, 247 S.E. 2d 878 (1978). Although not legally required to do so, in this case the State responded by including in the indictment additional information respecting the most likely theory upon which it would seek a conviction for the first degree sex offense. It seems inconceivable to me that the State should thereby be penalized — told that it may accommodate the defendant's perceived need for this information in an indictment rather than a Bill of Particulars, but it does so at the risk of being bound by its "election."

Justices MITCHELL and MARTIN join in this concurring opinion.